Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Counsel for Penson Financial Services, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | 11 Civ. ___ |
| ) | |
| ARBCO CAPITAL MANAGEMENT, LLP, ) | Bankruptcy Case No. 07-13283 |
| ) | (SCC) |
| Debtor. ) | |
| ) | |
| ) | |
| PENSON FINANCIAL SERVICES, INC., ) | |
| ) | |
| Movant, ) | Adversary Proceeding No. 09-01519 |
| ) | |
| vs. ) | |
| ) | |
| RICHARD O'CONNELL, as Chapter 7 ) | |
| Trustee of the estate of Arbco Capital ) | |
| Management, LLP, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**PENSON FINANCIAL SERVICES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
WITHDRAW THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................2

    The Adversary Proceeding ...............................................................................2

    *Stern v. Marshall* ...........................................................................................4

ARGUMENT .......................................................................................................5

I.      LEGAL STANDARD FOR WITHDRAWAL OF THE REFERENCE...........................5

II.    THE *ORION* FACTORS FAVOR WITHDRAWING THE REFERENCE ....................6

    A.    Under *Stern*, the Bankruptcy Court Does Not Have the Constitutional Authority to Enter Final Judgment on Any of the Claims In the Amended Complaint ................................................................................................6

          1.    The Common Law Claims are Matters of Private Right. ..........................8

          2.    The Actual and Constructive Fraudulent Transfer Claims are Matters of Private Right. ....................................................................9

          3.    The Preference Claim is a Matter of Private Right. ...............................12

    B.    Withdrawal Will Promote Judicial Efficiency.......................................13

    C.    Withdrawal Will Decrease Delay and the Parties' Costs. ....................15

    D.    Withdrawal Will Not Adversely Affect the Uniformity of the Bankruptcy Administration. ...............................................................................16

    E.    Withdrawal Will Not Promote Forum Shopping...................................17

III.   EVEN ASSUMING, *ARGUENDO*, THAT THE PREFERENCE CLAIM IS A MATTER OF PUBLIC RIGHT, WITHDRAWAL OF THE ENTIRE ADVERSARY PROCEEDING IS STILL WARRANTED BECAUSE NON-CODE CLAIMS AND ISSUES PREDOMINATE. .......................................19

CONCLUSION ....................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*131 Liquidating Corp. v. LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*,
  222 B.R. 209 (S.D.N.Y. 1998) ..................................................................................20

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*,
  362 B.R. 624 (Bankr. S.D.N.Y. 2008) ......................................................................17

*Comco Assocs. v. Faraldi Food Indus., Ltd.*,
  170 B.R. 765 (E.D.N.Y. 1994) ..................................................................................18

*Durand v. Ackerman (In re Durand)*,
  No. 09-CV-3372 (JFB), 2010 WL 3834587 (E.D.N.Y. Sept. 27, 2010)....................17

*Everett v. MCI , Inc. (In re WorldCom, Inc.)*,
  No. 07 Civ. 9590 (DC), 2008 WL 2441062 (S.D.N.Y. June 18, 2008) .....................14

*Franchise Mgmt. Servs., Inc. v. Righetti Law Firm, P.C.*,
  No. 09-cv-1578 (BTM) (RBB), 2009 WL 3254442 (S.D. Cal. Sept. 30, 2009) ....................20

*Gaming v. Insurcorp (In re Zante, Inc.)*,
  No. 3:10-cv-00231 (RCJ) (RAM), 2010 WL 5477768 (D. Nev. Dec. 29, 2010)....................20

*Granfinanciera, SA v. Nordberg*,
  492 U.S. 33 (1989) .............................................................................9, 10, 12

*In re Adelphia Comm'ns Corp. Secs & Derivative Litig.*,
  No. 03 MDL1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ..................19

*In re Blixseth*,
  Adv. No. 10-00088 (RBK) 2011 WL 3274042 (Bank. D. Mont. Aug 1, 2011) .........10, 11, 12

*In re MarketXT Holdings Corp.*,
  376 B.R. 390 (Bankr. S.D.N.Y. 2007) ......................................................................17

*In re Refco Secs. Litig.*,
  __ F. Supp. 2d __, No. 07 MDL 1902 (JSR), 2011 WL 1542508
  (S.D.N.Y. Apr. 25, 2011) ..........................................................................................20

*In re Tastee Donuts, Inc.*,
  137 B.R. 204 (E.D. La. 1992)....................................................................................19

*In re The VWE Group, Inc.*,
  359 B.R. 441 (S.D.N.Y. 2007) .............................................................................6, 16

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Joseph DelGreco & Co. v. DLA Piper LLP (In re Joseph DelGreco & Co.)*,
 No. 10 CV 6422 (NRB), 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) ..................................16

*Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.)*,
 No. 95 Civ. 2470, 1995 WL 479512 (S.D.N.Y. Aug. 10, 1995) ........................................6, 16

*M. Fabrikant & Sons, Inc. v. Long's Jewelers, Ltd.*,
 No. 08 CV 1982, 2008 WL 2596322 (S.D.N.Y. June 26, 2008) ............................................16

*Michaelesco v. Shefts*,
 303 B.R. 249 (D. Conn. 2004) ...............................................................................................17

*Mirant Corp. v. Southern Co.*,
 337 B.R. 107 (N.D. Tex. 2006) ..............................................................................................21

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
 458 U.S. 50 (1982) ...............................................................................................................4, 7

*Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transport
 Corp. (In re FMI Forwarding Co., Inc.)*,
 No. 01 Civ. 9462 (DAB), 2004 WL 1348956 (S.D.N.Y. June 16, 2004) ..............................13

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
 4 F.3d 1095 (2d Cir. 1993) ............................................................................................passim

*Rabin v. Kettlewell (In re Inkstop)*,
 No. 1:10-MC-71, 2010 WL 4687730 (N.D. Ohio Nov. 10, 2010).........................................20

*Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 No. 11 Civ. 0913, 2011 WL 2119720 (S.D.N.Y. May 23, 2011) ............................................6

*Shearson Lehman Hutton, Inc. v. Wagoner*,
 944 F.2d 114 (2d. Cir. 1991) ...........................................................................................20, 21

*Solutia Inc. v. FMC Corp.*,
 No. 04 Civ. 2842 (WHP), 2004 WL 1661115 (S.D.N.Y. July 27, 2004) ........................13, 15

*Stern v. Marshall*,
 131 S. Ct. 2594 (2011) ....................................................................................................passim

*Veys v. Riske*,
 No. C07-5625 (BHS), 2007 WL 4246172 (W.D. Wash. Nov. 28, 2007) ..............................16

**TABLE OF AUTHORITIES**
(continued)

**Page**

S&#x1d07;&#x1d00;&#x1d1b;&#x1d1c;&#x1d1b;&#x1d07;&#x1d00;

STATUTES

11 U.S.C. §§ 547 .................................................................................................... 3, 9

11 U.S.C. § 548(a)(1)(A) ........................................................................................ passim

11 U.S.C. § 548(a)(1)(B) ........................................................................................ passim

11 U.S.C. § 548(a)(2) .............................................................................................. 9

11 U.S.C. § 550 ....................................................................................................... 12

28 U.S.C. § 157(b)(1) ............................................................................................. 7

28 U.S.C. § 157(b)(2) ............................................................................................. 4, 7

28 U.S.C. § 157(b)(2)(C) ........................................................................................ 7

28 U.S.C. § 157(b)(2)(F) ........................................................................................ 10

28 U.S.C. § 157(c)(1) .............................................................................................. 14

28 U.S.C. § 157(c)(2) .............................................................................................. 14

28 U.S.C. § 157(d) .................................................................................................. 1, 5, 22

N.Y. Debtor & Creditor Law §§ 273-275 ............................................................. 17

Penson Financial Services, Inc. ("Penson") by and through its attorneys, Mayer Brown LLP, hereby submits its memorandum of law in support of its motion, pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Bankruptcy Rules for the Southern District of New York, for an order withdrawing the reference of this adversary proceeding, filed by Richard O'Connell, as Chapter 7 Trustee of the estate of Arbco Capital Management, LLP ("Trustee") from the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") to the United States District Court for the Southern District of New York ("District Court"). For the reasons that follow, the District Court should withdraw the reference.

## PRELIMINARY STATEMENT

Penson moves to withdraw the reference in response to the recent Supreme Court decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which has fundamentally changed the federal bankruptcy regime. In *Stern*, the Supreme Court held that the bankruptcy courts do not have the constitutional authority to enter final judgment on certain claims that are not integrally related to the administration of a debtor's estate. The seven claims asserted by the Trustee against Penson in this adversary proceeding are exactly the type of claims covered by *Stern*.

Critically, because Penson has not filed a proof of claim in the underlying bankruptcy, none of the Trustee's claims against Penson will necessarily be resolved in the claims allowance process. Nor do any of the claims arise out of the bankruptcy itself. In fact, the only connection between the claims and the underlying bankruptcy case is that, if successful, these claims will increase the amount of assets available to the estate's creditors. But *Stern* itself states that this connection is insufficient to bring such claims within the public right exception and, thus, within the constitutional authority of the bankruptcy courts. Because the Bankruptcy Court cannot enter final judgment on any of the Trustee's claims, adjudication of these claims by the this Court will

promote judicial efficiency and decrease delay and costs.  The proceedings before the

Bankruptcy Court are in their infancy; Penson's motion to dismiss the Amended Complaint is

pending before the Bankruptcy Court.  Withdrawal will ensure that this motion is ruled upon

only once and in an Article III court, which unquestionably has the constitutional authority to

finally dispose of all of the claims in this action.  And, even assuming, *arguendo*, that the

preference claim were a matter of public right (and it is not), case law makes clear that the entire

adversary proceeding should be withdrawn to the District Court because the non-Bankruptcy

Code claims and issues in the adversary proceeding predominate.

For these reasons, Penson's motion to withdraw the reference should be granted.

## BACKGROUND

### The Adversary Proceeding

The Trustee commenced this adversary proceeding against Penson, a Texas-based

clearing firm, in the Bankruptcy Court, asserting claims on behalf of the estate of Arbco Capital

Management, LLP ("Arbco"), which prior to its bankruptcy was an investment company run by

Hayim Regensberg ("Regensberg").  Am. Compl. ¶¶ 1, 9, 10.[1]  According to the Amended

Complaint, Regensberg, who also ran Arbco's predecessor company Midwest Trading LLC

("Midwest"), claimed to be using investor money for various investment and trading strategies

that posed little risk and generated high annual rates of return.  *Id.* ¶¶ 12-15.  In truth,

Regensberg used Arbco and Midwest to orchestrate a Ponzi scheme.  *Id.* ¶¶ 11-17.  Convicted of

seven counts of wire and securities fraud, Regensberg is now serving a 100-month prison

sentence.  *Id.* ¶ 17.

---

[1]     A copy of the Amended Complaint is attached as Exhibit A to the Declaration of James Ancone, dated
September 20, 2011 ("Ancone Decl.").

In the Amended Complaint, the Trustee alleges that Arbco and Penson engaged in a "multi-faceted" business relationship. *Id.* ¶ 1. As part of this relationship, Arbco opened a primary trading account and at least ten margin and sub-accounts at Penson. *Id.* ¶ 42. Among other services, Penson cleared and settled Arbco's trades. *Id.* ¶ 50. Within two years of the filing of its involuntary bankruptcy petition, Arbco made 37 cash transfers to Penson totaling $10,927,500 ("Transfers"). *Id.* ¶ 27 & Ex. A. Consistent with the nature of Penson's business, these Transfers were made in "payment of various trades and commissions, a significant part of which constituted settlements on trades." *Id.* ¶ 35; *see also id.* ¶ 92.

Premised on the baseless notion that Penson somehow knew or should have known about Regensberg's fraud, the Trustee asserts seven claims against Penson, relying on varying theories of liability: (1) avoidance and recovery of actual fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and 550 (Count I); (2) avoidance and recovery of constructive fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(B) and 550 (Count II); (3) avoidance and recovery of insider preferences under 11 U.S.C. §§ 547 and 550 (Count III); (4) aiding and abetting a common law fraud (Count IV); (5) common law breach of fiduciary duty (Count V); (6) common law breach of contract (Count VI); and (7) common law negligence (Count VII). The Trustee seeks identical relief with respect to each claim: a money judgment from the Bankruptcy Court. *Id.* ¶¶ 78, 86, 97, 111, 117, 122, 127. Apart from this adversary proceeding, Penson does not have any connection with Arbco's underlying bankruptcy and, indeed, has not filed a proof of claim against the estate. *See* Decl. of Mark Cuccaro, dated Sept. 20, 2011 ("Cuccaro Decl.") ¶ 3.

Although this adversary proceeding has been pending for nearly two years, it remains in its preliminary stages. No discovery has been exchanged. The pleadings have not yet closed.

The only activity has involved motion practice on the Trustee's multiple complaints.  Arguing, *inter alia*, that the fraudulent transfer and preference claims failed as a matter of law and that the Trustee lacked standing to pursue the common law claims, Penson moved to dismiss the Trustee's original complaint.  The Bankruptcy Court never ruled on the motion.  At the oral argument, Bankruptcy Judge Shelley Chapman observed that the original complaint was facially deficient, and the Trustee withdrew the complaint and filed the now operative Amended Complaint, which is replete with allegations pled on "information and belief" and derived from a jailhouse interview with Regensberg.  Penson again moved to dismiss all of the Trustee's claims.

### *Stern v. Marshall*

While Penson's motion was pending, on June 23, 2011, the Supreme Court issued its watershed decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  In *Stern*, the Court held that non-Article III Bankruptcy Courts lacked the constitutional authority to enter final judgment on a common law counterclaim—despite the fact that Congress specifically designated such a claim as "core" under 28 U.S.C. § 157(b)(2)—where that claim would not necessarily be resolved in the claims allowance process and did not fall within the public rights exception.  *Stern*, 131 S. Ct. at 2610.  Relying on its plurality opinion in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), the Court reasoned that Article III prevented Congress from placing the authority to finally resolve state law claims within the Bankruptcy Courts.  Given that the counterclaim was "one under state common law between two private parties," *Stern*, 131 S. Ct. at 2614, the Court concluded that it was a matter of private right and, therefore, must be finally adjudicated by an Article III court.

On or about July 5, 2011, shortly after the Supreme Court issued its decision in *Stern*, Penson informed the Trustee that the decision raised serious questions regarding the Bankruptcy Court's authority to enter final judgment on the Trustee's claims and urged the Trustee to assess

*Stern*'s impact on the action.  Declaration of Mark G. Hanchet, dated Sept. 20, 2011 ("Hanchet Decl.") ¶ 4 & Ex. A.  On August 1, 2011, Penson stated that it intended to move to withdraw the reference from the Bankruptcy Court and inquired whether the Trustee would consent to such a motion.  Hanchet Decl. ¶ 5 & Ex. B.   The Trustee did not consent.  *Id.* ¶ 6.  Instead, the parties agreed to discuss the impact of *Stern* at the next conference with the Bankruptcy Court on August 4, 2011.  *Id.*  ¶ 7.

At that conference, Penson informed the Bankruptcy Court that it believed that *Stern* provided a basis for a motion to withdraw the reference.  Transcript, dated Aug. 4, 2011 ("Tr.") at 5:11-18.[2]  Recognizing the significance of the decision, the Bankruptcy Court instructed the parties to confer regarding how to proceed in light of *Stern* and that, if no agreement could be reached, Penson should notify the Court as to whether it intended to move to withdraw the reference.  No agreement was reached.  Penson thereafter notified the Bankruptcy Court of its decision and filed this motion.  Hanchet Decl. ¶ 8 & Ex. C.  The Bankruptcy Court has not ruled on Penson's motion to dismiss the Amended Complaint.

## <u>ARGUMENT</u>

## I.   <u>LEGAL STANDARD FOR WITHDRAWAL OF THE REFERENCE</u>

"The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . on timely motion of any party, for cause shown."  28 U.S.C. § 157(d). The Second Circuit has held that, in determining whether "cause" for withdrawal exists, a district court should evaluate (1) "whether the claim is core or non-core," (2) "efficient use of judicial resources," (3) "delay and costs to the parties," (4) "uniformity of bankruptcy administration,"

---

[2]      A copy of the August 4, 2011 transcript is attached as Exhibit B to the Ancone Declaration.

(5) "the prevention of forum shopping," (6) and "other related factors."  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993).[3]

## II.  THE *ORION* FACTORS FAVOR WITHDRAWING THE REFERENCE

### A.  Under *Stern*, the Bankruptcy Court Does Not Have the Constitutional Authority to Enter Final Judgment on Any of the Claims In the Amended Complaint

In *Orion*, the Second Circuit instructed district courts to first determine whether a claim is core or non-core when evaluating a motion to withdraw the reference.  *Orion*, 4 F.3d at 1101. The purpose of the first factor is to determine whether the bankruptcy court is constitutionally empowered to enter final judgment on a particular claim since the remaining factors—most critically, judicial efficiency—will turn on this initial conclusion.  *Id.* ("A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn").

When the Second Circuit formulated the first factor of the *Orion* test, the court assumed that the core/non-core dichotomy created by Congress was constitutionally sound.  Based on this premise, the Second Circuit further assumed that bankruptcy courts held the constitutional

---

[3]    Penson's motion to withdraw the reference is timely.  "Courts in this Circuit have interpreted timeliness under Section 157 to mean as soon as possible after the moving party has notice of the grounds for withdrawing the reference."  *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 11 Civ. 0913, 2011 WL 2119720, at *8 (S.D.N.Y. May 23, 2011) (internal quotation marks omitted).  This inquiry is "made on a case-by-case, fact-specific basis."  *Id.*

Here, less than three months have passed between notice of the grounds for withdrawal (the issuance of the *Stern* decision on June 23, 2011) and the filing of this motion (on September 20, 2011).  Courts have consistently held longer periods of time to be timely.  *See, e.g.*, *In re The VWE Group, Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007) (four and one half months deemed timely); *Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.)*, No. 95 Civ. 2470, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) (nine months deemed timely).  During these three months, counsel for Penson promptly raised the issue of *Stern* and pro-actively discussed with the Bankruptcy Court and Trustee's counsel Penson's intention to move to withdraw the reference in light of *Stern*.  Hanchet Decl. ¶¶ 3-8 & Exs. A-C.  In addition, this adversary proceeding is in its initial stages.  There has been no discovery, Penson has not answered the Amended Complaint, and there is a pending motion to dismiss the Amended Complaint that has not yet been ruled upon.  *See In re The VWE Group, Inc.*, 359 B.R. at 446-47 (finding a motion to withdraw to be timely where there had been "no significant activity in the Bankruptcy Court," "defendants had not yet answered the complaint," and defendants "had filed a motion to dismiss on which the bankruptcy court had not yet ruled").

authority to enter final judgments on core claims.  This was not surprising, as this assumption

was codified by Congress in 28 U.S.C. § 157(b)(1), which provides that:

> Bankruptcy judges may hear and determine . . . all core
> proceedings arising under title 11, or arising in a case under title
> 11, referred under subsection (a) of this section, and may enter
> appropriate orders and judgments, subject to review under section
> 158 of this title.

28 U.S.C. § 157(b)(1).

Of course, *Stern* proved this assumption wrong.  The fact that the counterclaim in *Stern*

was specifically designated as a "core proceeding" under 28 U.S.C. § 157(b)(2)(C) did not mean

that the bankruptcy court held the constitutional authority to enter final judgment on that claim.

Thus, after *Stern*, the fact that a claim is labeled as core in 28 U.S.C. § 157(b)(2) is not

determinative of the bankruptcy court's constitutional authority to adjudicate fully a claim.

But the underlying purpose of the first *Orion* factor—to determine whether the

bankruptcy court has the constitutional authority to enter final judgment on a particular claim—

remains intact.  District courts must now make this assessment in light of the teachings of *Stern*,

taking into account, *inter alia*, whether the claim will necessarily be resolved in the claims

allowance process in the underlying bankruptcy case and whether the claim falls within the

public rights exception.  *See Stern*, 131 S. Ct. at 2611-15, 18.  The touchstone is whether a claim

can be "more accurately characterized as a private rather than a public right[.]"  *Id.* at 2614

(internal quotation marks omitted).  If the claim is a matter of private right, like the pre-petition

breach of contract claim in *Marathon* and the counterclaim for tortious interference in *Stern*, then

the strictures of Article III dictate that Congress cannot place the judicial power to enter final

judgment on such a claim within the bankruptcy court.

Here, the Bankruptcy Court does not possess the constitutional authority to enter final judgment on any of the Amended Complaint's seven claims because each is a matter of private right. The first *Orion* factor, therefore, favors withdrawal of the reference.

### 1.        The Common Law Claims are Matters of Private Right.

The Trustee asserts four common law claims against Penson: aiding and abetting a fraud, breach of fiduciary duty, breach of contract, and negligence. *See* Am. Compl. ¶¶ 98-127. The Bankruptcy Court cannot enter final judgment on any of these four claims.

*Stern* makes clear that Article III prevents Congress from assigning Bankruptcy Courts the task of entering final judgment on claims that are governed by state law and that will not necessarily be resolved in the claims allowance process. *See Stern*, 131 S. Ct. at 2601 (noting that "the Bankruptcy Court in this case exercised 'the judicial Power of the United States' in purporting to resolve and enter final judgment on a state common law claim"); *In re Med. Educ. & Health Servs., Inc.*, Adv. No. 10-148, 2011 WL 3880931, at *15 (Bankr. D. Puerto Rico Sept. 2, 2011) (*Stern* "specifies that a non-Article III judge of a bankruptcy court cannot constitutionally be given the authority to decide a debtor's claim that is exclusively based upon some legal right assured by state law.").

Here, the common law claims are clearly governed by state law. The parties exclusively cited state law when discussing these claims in their briefs on the pending motion to dismiss. And, these claims will not be resolved in connection with the claims allowance process for the simple reason that Penson has not filed a proof of claim in the Arbco bankruptcy. Cuccaro Decl. ¶ 3. The Bankruptcy Court, therefore, cannot enter final judgment on the four common law claims.

### 2.   The Actual and Constructive Fraudulent Transfer Claims are Matters of Private Right.

The Trustee also asserts claims to avoid and recover actual fraudulent conveyances (11 U.S.C. §§ 548(a)(1)(A), 550), constructive fraudulent conveyances (11 U.S.C. §§ 548(a)(1)(B), 550), and insider preferences (11 U.S.C. §§ 547, 550).  *See* Am. Compl. ¶¶ 70-97.  Because these claims are matters of private right, the Bankruptcy Court does not have the constitutional authority to enter final judgment on these claims either.

Relying on its decision in *Granfinanciera, SA v. Nordberg*, 492 U.S. 33 (1989), the Court in *Stern* emphasized that fraudulent conveyance claims are matters of private right.  The Court reasoned that:

> fraudulent conveyance suits were 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.' [*Granfinanciera*], at 56, 109 S. Ct. 2782.  As a consequence, we concluded that fraudulent conveyance actions were 'more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions.'

*Stern*, 131 S. Ct. at 2614 (quoting *Granfinanciera*, 492 U.S. at 55, 56).  In *Granfinanciera*, the issue was whether a party that did not submit a claim against a bankruptcy estate had the right to a jury trial under the Seventh Amendment when sued by a trustee in bankruptcy to recover an allegedly fraudulent transfer of money.  *See Granfinanciera*, 492 U.S. at 36.  In answering this question in the affirmative, the court concluded, as a preliminary matter, that a fraudulent transfer claim asserted under the Bankruptcy Code ("Code") was a matter of private right under its Article III jurisprudence:  "[A] bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions."  *Id*. at 55.

As the Court discussed in *Stern*, Article III prevents Congress from assigning to the bankruptcy courts the power to adjudicate fully claims that are matters of private right.  *Stern*, 131 S. Ct. at 2613-14.  The logical implication from *Stern* and *Granfinanciera* is that non-Article III bankruptcy courts cannot render final judgments on claims seeking to recover transfers as actual or constructive fraudulent conveyances.  This conclusion is not altered by the fact that such claims are specifically characterized as core proceedings by Congress.  *See* 28 U.S.C. § 157(b)(2)(F) (core proceedings include "proceedings to determine, avoid, or recover preferences").  In *Stern*, the Court looked beyond the characterization of the common law counterclaim as core and, instead, focused on whether the claim would be considered a matter of private or public right under Article III and the court's corresponding jurisprudence.  *See Stern*, 131 S. Ct. at 2608.  This logic applies with equal force here.

Moreover, since *Stern*, two bankruptcy courts have squarely held that they did not have constitutional authority to enter final judgment on fraudulent conveyance claims brought under the Code.  In *Samson v. Blixseth (In re Blixseth)*, Adv. No. 10-00088 (RBK), 2011 WL 3274042 (Bankr. D. Mont. Aug 1, 2011), a Chapter 7 trustee commenced an adversary proceeding in Bankruptcy Court against Timothy Blixseth, asserting fraudulent transfer claims under the Code to avoid and recover certain transfers of assets made by Blixseth.  In ruling on Blixseth's motion to dismiss, the court *sua sponte* raised the issue of its constitutional authority to enter final judgment on the fraudulent transfer claim, concluding that it could not in light of *Stern*:

> Fraudulent conveyance claims in bankruptcy do not fall within the public rights exception. Although codified by the Bankruptcy Reform Act of 1978, fraudulent conveyance claims are 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'  *Granfinanciera*, 492 U.S. at 56. . . .  Such language implies

> that bankruptcy actions tied to the claims allowance process would fall within the public rights exception as integrally related to federal administration of bankruptcy, while actions to augment the estate would not. *Since Trustee's fraudulent conveyance claim is essentially a common law claim attempting to augment the estate, does not stem from the bankruptcy itself and would not be resolved in the claims allowance process, it is a private right that must be adjudicated by an Article III court. This Court's jurisdiction over that claim as a core proceeding is therefore unconstitutional.*

*In re Blixseth*, 2011 WL 3274042, at *11 (emphasis added).

Similarly, in *Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, Adv. No. 07-80037 (JRH), 2011 WL 3610050 (Bankr. W.D. Mich. Aug. 17, 2011), Huntington National Bank, the defendant in an adversary proceeding, moved the Bankruptcy Court to amend its pretrial order to reflect the fact that, in light of *Stern*, the court was not empowered to enter final judgment on the trustee's fraudulent transfer claim brought under the Code. *Id.* at *1; *see also id.* at *14 (describing the adversary proceeding as "simply an action by the Teleservice's trustee to compel Huntington to account under Section 550(a) for fraudulent transfers she has traced to Huntington either directly or through a related company"). Noting that the "application of *Stern* to the matter at hand is easy," *id.* at *14, the court granted the motion, concluding that "any judgment that will enter against Huntington in this adversary proceeding must be entered by an Article III judge." *Id.* The court explained that "*Stern*, coupled with the Court's earlier decision in *Murray's Lessee*, is all that is needed to realize that the taking that [the] Trustee has in mind in this adversary proceeding requires the oversight of a judicial officer with the independence that is only guaranteed by life tenure and salary protection." *Id.*

Here, the Trustee seeks to avoid and recover 37 transfers from Arbco to Penson as either actual fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A) or constructive fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B). Am. Compl. ¶¶ 27, 70-87. With respect to both

-11-

claims, the Trustee requests that the Bankruptcy Court enter "judgment against Penson pursuant to [11 U.S.C. §] 550 of the Bankruptcy Code for the amount of [$10,927,500], together with applicable interest."  Am. Compl. ¶ 78; *see also id.* ¶ 86.  These two claims will not be decided in the claims allowance process for the simple reason that Penson has not filed a proof of claim against Arbco's estate in the underlying bankruptcy case.  And, it cannot be said that the fraudulent transfer claims are integrally related to Arbco's underlying bankruptcy case.  As in *Granfinanciera*, the Trustee here brings these claims merely "to augment the bankruptcy estate." *Granfinanciera*, 492 U.S. at 56.  Indeed, *Stern* and its progeny make clear that fraudulent conveyance claims—even when framed as claims arising from the Code itself—do not fall within the public rights exception.  *See Stern*, 131 S. Ct. at 2614 (noting that "the fraudulent conveyance claim at issue in *Granfinanciera*" did "not fall within any of the varied formulations of the public rights exception in this Court's cases"); *In re Blixseth*, 2011 WL 3274042, at *11 ("Fraudulent conveyance claims in bankruptcy do not fall within the public rights exception.").  It follows that the Trustee's actual and constructive fraud claims, like the common law counterclaim in *Stern* and the fraudulent transfer claims in *Blixseth* and *Meoli*, are matters of private right that cannot be adjudicated to final judgment by the Bankruptcy Court.

### 3.     The Preference Claim is a Matter of Private Right.

Under *Stern*'s logic, the preference claim (Count III) must also be finally adjudicated by this Court.  As relief on this claim, the Trustee requests that the Bankruptcy Court enter a money judgment "pursuant to [11 U.S.C. § 550] for the amount of [the Transfers] made within the applicable one year or ninety day preference period."  Am. Compl. ¶ 97.  Like the actual and constructive fraud claims, the preference claim will not "necessarily be resolved" in the claims allowance process.  *Stern* itself explained that where, as here, a "creditor has not filed a proof of claim, the trustee's preference action does *not* become[] part of the claims-allowance process

subject to resolution by the bankruptcy court." *Stern*, 131 S. Ct. at 2617 (emphasis in original; internal quotation marks omitted). Indeed, the only connection that this claim has with respect to the bankruptcy case is that, if successful, it will augment the debtor's estate. But this is not enough to bring the claim within the ambit of the public rights exception. *See Stern*, 131 S. Ct. at 2618 ("Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case[.]") (emphasis in original). Given this, the preference claim "more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res," *id.* at 2614, and, therefore, it is a matter of private right.

**B.    Withdrawal Will Promote Judicial Efficiency.**

Courts analyzing the second *Orion* factor in the pre-*Stern* world have held that where, as here, the bankruptcy court cannot enter final judgment on certain claims in an adversary proceeding, judicial efficiency will be promoted by having the district court hear those claims as an initial matter. *See, e.g.*, *Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transport Corp. (In re FMI Forwarding Co., Inc.)*, No. 01 Civ. 9462 (DAB), 2004 WL 1348956, at *6 (S.D.N.Y. June 16, 2004) ("[W]ithdrawing the reference at this stage in the adversary proceeding will further rather than undermine judicial economy. Because the malpractice claim against Marcus is a non-core proceeding, the bankruptcy court cannot adjudicate it but may only issue proposed findings of fact and conclusions of law, which would then have to be reviewed *de novo* by this Court, which has the sole authority to adjudicate non-core claims. However, transferring the malpractice action against Marcus to this Court would allow for the claim to be adjudicated and disposed of in one proceeding, thereby saving judicial and party time and resources.") (citation omitted); *see also Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842 (WHP), 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) ("By litigating this non-

-13-

core matter in the district court, judicial resources will be conserved instead of having two courts administer two rounds of briefing and argument on the same issues.").

Here, withdrawal of the reference will promote judicial efficiency for similar reasons.  If this adversary proceeding were to continue below, the Bankruptcy Court would lack the constitutional authority to enter final judgment on all of the Trustee's claims and would, at most, issue proposed findings of facts and conclusions of law with respect to these claims.  Because objections would undoubtedly be filed, these proposed findings would then be reviewed *de novo* by this Court.  28 U.S.C. § 157(c)(1).[4]  This reasoning is particularly forceful here because Penson's motion to dismiss the entire Amended Complaint is pending before the Bankruptcy Court.  Thus, in order to promote judicial efficiency, the Trustee's claims should be adjudicated in the first instance by this Court, which unquestionably has the constitutional authority to enter a final judgment on all seven claims in the Amended Complaint.  *See Stern*, 131 S. Ct. 2603-04.

Additionally, if this adversary proceeding is withdrawn, there will be no duplication of judicial resources since the District Court will be essentially starting on a clean slate.  No discovery has been propounded.  And, Penson's motion to dismiss likely will have to be re-briefed in light of new legal developments raised by the Bankruptcy Court.[5]  *See Everett v. MCI ,*

---

[4]        Section 157(c)(1) provides as follows:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).  Bankruptcy courts may enter final judgments in non-core proceedings if all the parties consent.  *See* 28 U.S.C. § 157(c)(2).  Penson, however, does not consent to the Bankruptcy Court entering final judgment on any of the Trustee's claims.  Cuccaro Decl. ¶ 4.

[5]        At the August 4, 2011 status conference, the Bankruptcy Court proposed that the parties re-brief the pending motion to dismiss to address recent case law that is directly germane to the issues in this action:

*Inc. (In re WorldCom, Inc.)*, No. 07 Civ. 9590 (DC), 2008 WL 2441062, at *6 (S.D.N.Y. June 18, 2008) (finding that withdrawal promoted judicial efficiency because, *inter alia*, "the case appears to be in the relatively early stages of litigation before the Bankruptcy Court" and "the Bankruptcy Court had made no rulings in the case").  In the event this action proceeds to discovery, the District Court, given its authority to refer issues to a magistrate judge, will have more resources at its disposal to oversee discovery than the Bankruptcy Court, which will be involved constantly in the administration of debtors' estates.  *See Solutia Inc.*, 2004 WL 1661115, at *3 (finding that withdrawal would promote judicial efficiency because, *inter alia*, "[b]ankruptcy judges are deluged with matters relating to the administration of bankrupt estates and are the busiest courts in the nation"; "[the] case will impose significant demands on any court overseeing it"; and "Magistrate [J]udges receive discrete assignments, and have much greater control over their calendars.").

The second *Orion* factor favors withdrawal of the reference.

C.    <u>**Withdrawal Will Decrease Delay and the Parties' Costs**</u>.

Because the Bankruptcy Court cannot fully adjudicate any of the Trustee's claims and, at best, will have to issue proposed findings of fact and conclusions of law, withdrawal will decrease delay and costs by litigating these claims in the District Court only, rather than both courts.  Courts have consistently found that avoiding the delays and costs created by litigating in these two *fora* strongly favors withdrawal of the reference.  *See Solutia Inc.*, 2004 WL 1661115,

---

And as I'm sure you are aware, there have been a lot of developments in the law since we were all together last time. . . .  I count five major cases that have been handed down. . . .  I'm just going to tell you what I think we have to deal with, and I'm hoping that you folks will agree.  I'm not going to give you the answers to what I think each of these cases means, but I'm going to raise them as being applicable, and to the extent that we can come to a common understanding, that's great.  And if not, we're going to have to have briefing.

Tr. at 4:16-5:3 (Ancone Decl., Ex. B).

at *3 ("This factor strongly favors withdrawal of the reference.  If this Court did not withdraw the reference it would conduct a *de novo* review of the bankruptcy court's rulings, resulting in relitigation of claims and significant additional costs and expenditure of time and effort to both parties."); *see also In re The VWE Group*, 359 B.R. at 451 ("Since the Bankruptcy Court's determination of this non-core claim would be subject to de novo review in the district court, unnecessary costs can be avoided by a single proceeding in this court"); *In re Kentile Floors, Inc.*, 1995 WL 479512, at *4 (concluding that because the action was "non-core, the bankruptcy court's determination would be subject to de novo review," and, thus, "a single proceeding in [the District Court] would avoid unnecessary cost").

The third *Orion* factor favors withdrawal of the reference.

### D.      Withdrawal Will Not Adversely Affect the Uniformity of the Bankruptcy Administration.

Withdrawal of the Bankruptcy Court's reference cannot have an adverse effect on the uniformity of the bankruptcy administration because an Article III court, such as the District Court, is the only court empowered to render final judgment on the Trustee's claims in the first place.  In addition, withdrawal will not prevent the Bankruptcy Court from continuing to administer Arbco's estate.  Moreover, non-Code claims and issues predominate this adversary proceeding.  *See Veys v. Riske*, No. C07-5625 (BHS), 2007 WL 4246172, at *3 (W.D. Wash. Nov. 28, 2007) ("Withdrawal would not disrupt the uniformity of bankruptcy administration because, as discussed above, [movant's] adversary complaint is largely independent from issues of bankruptcy administration.").  A majority of the claims asserted—four of seven—are common law claims and, as such, "do not raise substantive issues of bankruptcy law." *Joseph DelGreco & Co. v. DLA Piper LLP (In re Joseph DelGreco & Co.)*, No. 10 CV 6422 (NRB), 2011 WL 350281, at *5 (S.D.N.Y. Jan. 26, 2011); *see also M. Fabrikant & Sons, Inc. v. Long's Jewelers,*

*Ltd.*, No. 08 CV 1982, 2008 WL 2596322, at *4 (S.D.N.Y. June 26, 2008) ("Withdrawing the reference would not hamper uniform administration of the bankruptcy code because this case is a 'non-core' proceeding"); *Michaelesco v. Shefts*, 303 B.R. 249, 254 n.6 (D. Conn. 2004) ("Because the instant dispute is non-core, it is not likely to have much impact on the uniformity of bankruptcy administration[.]").

And, the actual fraudulent transfer and constructive fraudulent transfer claims are merely analogues of the fraudulent transfer claims codified in New York's Debtor and Creditor Law, and, as noted above (*see supra* at 9-12), matters of private right. *See Durand v. Ackerman (In re Durand)*, No. 09-CV-3372 (JFB), 2010 WL 3834587, at *3 (E.D.N.Y. Sept. 27, 2010) ("The New York Debtor and Creditor Law, and its analogous provisions in the Bankruptcy Code, protect against two kinds of fraudulent transfers: (1) transfers made with an actual intent to hinder, delay, or defraud; and (2) transfers that the law considers to be fraudulent, i.e., constructively fraudulent transfers."); *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 629 (Bankr. S.D.N.Y. 2008) ("This provision [11 U.S.C. § 548(a)(1)(A)], like analogous provisions under [New York] state law, avoids the entire amount of 'any transfer' which was made by the transferor with actual intent to hinder, delay or defraud creditors."); *In re MarketXT Holdings Corp.*, 376 B.R. 390, 420 n.42 (Bankr. S.D.N.Y. 2007) ("[T]here is no dispute that Federal and State law are virtually identical as to their requirements for proving a constructive fraudulent conveyance."); *see also* N.Y. Debtor & Creditor Law §§ 273-275 (constructive fraudulent transfer), § 276 (actual fraudulent transfer).

The fourth *Orion* factor favors withdrawal of the reference.

### E.   <u>Withdrawal Will Not Promote Forum Shopping</u>.

Penson moves to withdraw the reference because it has a right under *Stern* to seek final adjudication on all of the Trustee's claims by an Article III court and to benefit from the

corresponding preservation of resources and costs.  Indeed, the contemporaneous facts demonstrate that Penson filed this motion at the earliest opportunity under the circumstances.

Shortly after the Supreme Court issued its decision in *Stern*, Penson informed the Trustee that it believed *Stern* directly impacted the Bankruptcy Court's authority to enter final judgment on all of its claims and that Penson would accordingly move to withdraw the reference.  Hanchet Decl ¶¶ 3-6 & Exs. A-B.  The parties agreed to raise the issue with the Bankruptcy Court at the next scheduled conference on August 4, 2011, during which Penson again reiterated its desire to move to withdraw the reference.  Hanchet Decl. ¶ 7.  At the conference, the Bankruptcy Court instructed the parties to confer regarding how best to proceed in light of *Stern*, and that, absent an agreement, Penson should move to withdraw as soon as practicable after September 6, 2011.  Hanchet Decl. ¶ 7.  Because the parties did not agree as to the impact of *Stern*, Penson promptly filed this motion within two weeks of September 6, 2011, which is less than three months after the issuance of *Stern*.  Hanchet Decl. ¶ 8 & Ex. C.  These facts clearly negate any inference that this motion is motivated by forum shopping.

Moreover, this is not a case in which a party is attempting to evade a court after it has issued an adverse determination on a dispositive motion.  To the contrary, the Bankruptcy Court here has not even heard argument—never mind ruled on—Penson's motion to dismiss the Amended Complaint.  In fact, the Bankruptcy Court has not issued *any* rulings in this case.  Thus, it cannot be said that Penson is attempting to avoid a court that has ruled against it.  *See Comco Assocs. v. Faraldi Food Indus., Ltd.*, 170 B.R. 765, 772 (E.D.N.Y. 1994) ("[I]t has not escaped this Court's notice that the bankruptcy court consistently ruled against [movant] and for that reason [movant] may well desire another forum.  However, as noted in *Orion*, forum shopping is to be prevented.").  And, the typical indicia of forum shopping—moving to a forum

-18-

with more favorable law and geographical convenience—are not present here.  *See In re Adelphia Comm'ns Corp. Secs & Derivative Litig.*, No. 03 MDL1529 (LMM), 2006 WL 337667, at *5 (S.D.N.Y. Feb. 10, 2006)  ("There is no serious 'forum-shopping' issue here:  the usual objectives of 'forum-shopping'-finding a jurisdiction with more favorable law, and geographical convenience-do not apply, both the bankruptcy court and the district court being bound to follow Second Circuit law, and both courts being located in downtown Manhattan.") (granting motion to withdraw the reference).

The fifth *Orion* factor favors withdrawal of the reference.

**III.    EVEN ASSUMING, *ARGUENDO*, THAT THE PREFERENCE CLAIM IS A MATTER OF PUBLIC RIGHT, WITHDRAWAL OF THE ENTIRE ADVERSARY PROCEEDING IS STILL WARRANTED BECAUSE NON-CODE CLAIMS AND ISSUES PREDOMINATE.**

Even assuming, *arguendo*, that the Trustee's preference claim is a matter of public right over which the Bankruptcy Court has the authority to enter final judgment (and it is not, *see supra* at 12-13), the adversary proceeding should still be withdrawn in its entirety.  All seven of the Trustee's claims should be heard by this Court because non-Code claims and issues in this action predominate and judicial efficiency will be promoted by having all of the claims before a single court.

Courts consistently hold that, where an adversary proceeding contains both core and non-core claims and where non-core claims and issues predominate, judicial efficiency is furthered by withdrawing all claims to the district court.  *See  In re Tastee Donuts, Inc.*, 137 B.R. 204, 207 (E.D. La. 1992) (observing that claims were non-core and finding that, "[e]ven if this adversary proceeding involves core matters as well, . . . the interests of judicial efficiency require that the reference be withdrawn for the entire adversary proceeding"); *see also Gaming v. Insurcorp (In re Zante, Inc.)*, No. 3:10-cv-00231 (RCJ) (RAM), 2010 WL 5477768, at *6 (D. Nev. Dec. 29,

2010) ("[N]on-core issues heavily predominate.  Eight of the nine causes of action are common law contract or tort claims.") (granting motion to withdraw the entire adversary proceeding); *Rabin v. Kettlewell (In re Inkstop)*, No. 1:10-MC-71, 2010 WL 4687730, at *1 (N.D. Ohio Nov. 10, 2010) (finding that "Plaintiff's non-core allegations predominate [over the core allegations] in her claims against the Defendants" and granting unopposed motion to withdraw the entire adversary proceeding); *Franchise Mgmt. Servs., Inc. v. Righetti Law Firm, P.C.*, No. 09-cv-1578 (BTM) (RBB), 2009 WL 3254442, at *1 (S.D. Cal. Sept. 30, 2009) ("Withdrawing the reference typically enhances efficiency where non-core issues predominate."); *131 Liquidating Corp. v. LaSalle Capital Group, Inc. (In re 131 Liquidating Corp.)*, 222 B.R. 209, 213 (S.D.N.Y. 1998) ("At least one of the claims at issue is non-core and must be tried before a jury in this Court. Since all the claims arise from the same letter of intent and all parties agree that the core and non-core claims should be tried together, the reference is withdrawn as to all claims.").

Here, the non-Code claims and issues predominate.  A majority of the Trustee's claims— four out of seven—clearly are governed by state law and are premised on Regensberg's and Penson's pre-petition conduct.  Each of these claims seeks the full amount of damages.  *See* Am. Compl. ¶¶ 111, 117, 122, 127.  In addition, the Trustee's assertion of these common-law claims raises issues of standing under the *Wagoner* Rule, which is a matter that is completely independent of the Code.  *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d. Cir. 1991); *see also In re Refco Secs. Litig.*, __ F. Supp. 2d __, No. 07 MDL 1902 (JSR), 2011 WL 1542508, at *4 n.1 (S.D.N.Y. Apr. 25, 2011) (describing the *Wagoner* Rule as "a prudential limitation on standing under federal law.").  In fact, a substantial part of the briefing on Penson's motion to dismiss relates to the application of the *Wagoner* Rule and its exceptions.  The motion

to dismiss also raises issues regarding the legal sufficiency of the four common-law claims; these are issues that have nothing to do with the Code.

And, two of the remaining three claims—the actual fraud claim under 11 U.S.C. § 548(a)(1)(A) and the constructive fraud claim under 11 U.S.C. § 548(a)(1)(B)—are, as discussed above, "quintessentially suits at common law" on which the Bankruptcy Court cannot enter final judgment. *Stern*, 131 S. Ct. at 2614 (quoting *Granfinanciera*, 492 U.S. at 56).

Thus, even assuming that the Bankruptcy Court could enter final judgment on the preference claim, the remaining six claims are matters of private right which the Bankruptcy Court cannot fully adjudicate. Judicial efficiency will be furthered and cost and delay reduced by withdrawing all seven claims to the District Court rather than withdrawing six claims and leaving one claim in the Bankruptcy Court. *See Mirant Corp. v. Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("[A]djudicating all of the claims, both core and non-core, in the district court eliminates the prospect of an appeal from the bankruptcy judge's adjudications of core claims, and dispenses with the need for the district court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy judge after a trial in the bankruptcy court as to non-core claims. And, for the same reasons, withdrawal of the reference will foster the economical use of the resources of the litigants.") (granting motion to withdraw the reference of an adversary proceeding asserting both core and non-core claims).

## **CONCLUSION**

Each of the *Orion* factors favors withdrawal of the reference. Under *Stern*, the Bankruptcy Court is not constitutionally empowered to enter final judgment on any of the seven claims asserted by the Trustee in the Amended Complaint. Adjudicating these claims in the District Court—which can unquestionably exercise this authority—will promote judicial

efficiency and conserve party resources.  And, even if the preference claim were a matter of public right, the entire adversary proceeding should be withdrawn to the District Court because the non-Code claims and issues in this adversary proceeding predominate.  For these reasons, Penson's motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference should be GRANTED.

Dated:  September 20, 2011

MAYER BROWN LLP

By:    /s/ Mark G. Hanchet

1675 Broadway, 19th Floor
New York, New York  10019
Tel:  (212) 506-2500
Fax: (212) 262-1910
*Attorneys for Defendant*
*Penson Financial Services, Inc.*

Of counsel:  James Ancone, Esq.