Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Counsel for Penson Financial Services, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | 11 Civ. 6586 (JPO) |
| ARBCO CAPITAL MANAGEMENT, LLP, | Bankruptcy Case No. 07-13283 |
| Debtor. | |
| PENSON FINANCIAL SERVICES, INC., | |
| Movant, | Adversary Proceeding No. 09-01519 |
| vs. | |
| RICHARD O'CONNELL, as Chapter 7 Trustee of the estate of Arbco Capital Management, LLP, | |
| Respondent. | |

**PENSON FINANCIAL SERVICES, INC.'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION
<u>TO WITHDRAW THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

I.      PENSON DID NOT "IMPLICITLY CONSENT" TO THE BANKRUPTCY
        COURT ENTERING FINAL JUDGMENT ON THE TRUSTEE'S CLAIMS ............... 1

II.     THE *ORION* FACTORS FAVOR WITHDRAWAL OF THE REFERENCE ................. 3

        A.      The Bankruptcy Court Does Not Have the Constitutional Authority to
                Enter Final Judgment on Any of the Claims in the Amended Complaint ............ 3

                1.      The Common Law Claims Are Matters of Private Right ......................... 3

                2.      The Fraudulent Transfer Claims Are Matters of Private Right ................. 4

                3.      The Preference Claim is a Matter of Private Right .................................. 6

        B.      Withdrawal Will Promote Judicial Efficiency ........................................................ 7

        C.      Withdrawal Will Decrease Delay and the Parties' Costs ....................................... 8

        D.      Withdrawal Will Not Adversely Affect the Uniformity of the Bankruptcy
                Administration ...................................................................................................... 8

        E.      Withdrawal Will Not Promote Forum Shopping .................................................... 8

III.    WITHDRAWAL OF THE ENTIRE ADVERSARY PROCEEDING IS
        WARRANTED BECAUSE NON-CODE CLAIMS AND ISSUES
        PREDOMINATE ........................................................................................................... 9

CONCLUSION ........................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bennett v. Genoa AG Cntr., Inc. (In re Bennett)*,
  154 B.R. 126 (Bankr. N.D.N.Y. 1992) ...................................................................3

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  No. 1:11-cv-05984 (CM) (S.D.N.Y. Nov. 2, 2011)........................................ *passim*

*Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman)*,
  Adv. No. 10-3203DM et al., 2011 WL 4542512 (Bankr. N.D. Cal. Sept. 28, 2011) ...........4, 5

*Hiser v. Neuman Med. Ctr., Inc. (In re St. Mary Hosp.)*,
  117 B.R. 125 (Bankr. E.D. Pa. 1990) ....................................................................2

*In re Magnesium Corp. of Am.*,
  04 Civ. 1357 (PKC), 2004 WL 1161172 (S.D.N.Y. May 24, 2004) ........................................9

*In re Mankin*,
  823 F.2d 1296 (9th Cir. 1987) ...........................................................................5

*In re Men's Sportswear*,
  834 F.2d 1134 (2d Cir. 1987).........................................................................2, 3

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993)..........................................................................3, 8, 9

*In re Safety Harbor Resort & Spa*,
  __ B.R. __, No. 8:10-bk-25886, 2011 WL 3849639 (Bankr. M.D. Fla. Aug. 30, 2011) ..4, 5, 6

*McCord v. Papantoniou*,
  316 B.R. 113 (E.D.N.Y. 2004) ..........................................................................9

*Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*,
  __ B.R. __, Adv. No. 07-80037 (JRH), 2011 WL 3610050 (Bankr. W.D. Mich. Aug.
  17, 2011) ...........................................................................................4, 5, 6

*Meyers v. Textron Fin. Corp. (In re AIH Acquisitions, LLC)*,
  4:11-CV-379-A, 2011 WL 4000894 (N.D. Tex. Sept. 7, 2011)...................................................3

*Mishkin v. Ageloff*,
  220 B.R. 784 (S.D.N.Y. 1998)........................................................................9, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*,
    Adv. No. 11-A-581, 2011 WL 3911082 (N.D. Ill. Sept. 1, 2011) ........................................4, 6

*Samson v. Blixseth (In re Blixseth)*,
    Adv. No. 10-00088 (RBK), 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) ...........4, 5, 6

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011) ...................................................................................................... *passim*


**STATUTES**

11 U.S.C. § 546(e) ..............................................................................................................7

28 U.S.C. § 157(b)(2) ........................................................................................................6

28 U.S.C. § 157(b)(2)(C) ...................................................................................................5

28 U.S.C. § 157(d) ..........................................................................................................1, 10


**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7012(b) ..................................................................................................3

## PRELIMINARY STATEMENT

This District's most recent decision regarding the effect of *Stern v. Marshall*, 131 S. Ct.

2594 (2011) issued by District Judge Colleen McMahon granted a motion to withdraw the

reference and squarely rejected arguments identical to those advanced by the Trustee in this

case.[1]  This Court should follow the reasoning of this decision and withdraw the reference.

## I.   PENSON DID NOT "IMPLICITLY CONSENT" TO THE BANKRUPTCY COURT ENTERING FINAL JUDGMENT ON THE TRUSTEE'S CLAIMS.

Shortly after the Supreme Court issued its decision in *Stern*, Penson[2] moved to withdraw

the reference to secure its right to have an Article III court enter final judgment on the Trustee's

claims.  In his Opposition, the Trustee contends that Penson waived this right and implicitly

consented to the Bankruptcy Court entering final judgment on his claims.  Opp. at 1, 9.  The

Trustee bases this on the notion that Penson "request[ed] relief from the Bankruptcy Court not

once, but twice, without mentioning jurisdiction until its reply papers filed in connection with the

second motion [to dismiss]."[3]  Opp. at 9.  This argument fails for several reasons.

First of all, Penson's motion is predicated on *Stern*, which was decided on June 23, 2011.

Within days of the decision, Penson contacted the Trustee's counsel to discuss *Stern*'s impact on

Penson's pending motion to dismiss, and it raised *Stern* at a status conference before Bankruptcy

Judge Shelley C. Chapman on August 4, 2011.  Following further discussions with Trustee's

---

[1]     For the Court's convenience, this unpublished decision—*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, No. 1:11-cv-05984 (CM) (S.D.N.Y. Nov. 2, 2011)—is attached as Exhibit A to the Declaration of James Ancone, dated Nov. 4, 2011 ("Ancone Reply Decl.").

[2]     The defined terms used in Penson's Memorandum of Law in Support of Its Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d), dated September 20, 2011 (the "Motion"), are adopted herein.  The Trustee's Memorandum of Law In Opposition to Motion of Penson Financial Services, Inc. to Withdraw the Reference, dated October 21, 2011, is defined as the "Opposition."

[3]     For the sake of clarity, two inaccuracies in this statement must be corrected.  First, Penson initially raised the issue of *Stern*'s impact on this case on July 5, 2011—not in its reply memorandum filed on May 26, 2011, as the Trustee contends.  *See* Mot. at 4.  Second, the issue is not whether the Bankruptcy Court has "jurisdiction" but rather whether the Bankruptcy Court has the constitutional authority to enter final judgment under *Stern*.  *See Dev. Specialists*, slip op. at 23 ("*Stern* makes clear that the issues of jurisdiction and final adjudicative power are distinct.").

counsel, Penson filed the instant motion on September 20, 2011, in keeping with Penson's letter

to the Bankruptcy Court.  *See* Hanchet Decl. ¶ 8 & Ex. C.  The Trustee cannot credibly assert

that Penson could have made its Motion any earlier, or that Penson "waived" its right to do so in

the wake of *Stern.  See Dev. Specialists*, slip op. at 23-24 (rejecting implied consent argument on

similar grounds and noting that the court "doubt[ed] whether [it] could infer from the [movants']

pre-*Stern* litigation conduct a 'knowing and voluntary' relinquishment of rights to an Article III

decision-maker").

   Moreover, the Trustee's primary authority for his "waiver" argument—*In re Men's

Sportswear*, 834 F.2d 1134 (2d Cir. 1987)—is inapposite.  There, the Second Circuit found that a

defendant implicitly consented to bankruptcy court final adjudication on a state law breach of

contract claim because the defendant repeatedly had failed to contest such authority before both

the bankruptcy and the district court; it raised the issue for the first time on appeal to the Second

Circuit.  *Id.* at 1138.

   Here, Penson's conduct does not support any inference of implied consent.[4]  Unlike the

defendant in *Men's Sportswear*, which waited until it was on appeal before the Second Circuit to

raise the issue, Penson promptly and proactively challenged the Bankruptcy Court's authority

shortly after *Stern* was decided.  Mot. 4-5; *see Dev. Specialists*, slip op. at 24 (rejecting reliance

on *Men's Sportswear* for similar reasons).  Indeed, even the court in *Men's Sportswear* cautioned

that "a court should not lightly infer from a litigant's conduct consent to have private state-

created rights adjudicated by a non-Article III bankruptcy judge."[5]  *Id.*

---

[4]     Penson also has expressly withheld its consent.  *See* Mot. at 14 n.4 ("Penson . . . does not consent to the
Bankruptcy Court entering final judgment on any of the Trustee's claims.").

[5]     The Trustee also cites *Hiser v. Neuman Med. Ctr., Inc. (In re St. Mary Hosp.)*, 117 B.R. 125 (Bankr. E.D.
Pa. 1990) for the proposition that "consent may be implied and, once given, it is irrevocable."  Opp. at 9.  The
Trustee misreads this decision and, in any event, it offers no support for the Trustee's theory.  The court in *Hiser* did
not discuss implied consent.  Rather, the court merely noted that where a defendant "admits without qualification"

In any event, even if the Trustee's implied consent theory had merit (it does not), it would have no application to his four common law claims.  "[P]resent law seems to mandate that parties must expressly consent to the entry of a final order by the bankruptcy court in the determination of non-core matters." *Bennett v. Genoa AG Cntr., Inc. (In re Bennett)*, 154 B.R. 126, 139-40 (Bankr. N.D.N.Y. 1992); *see also* Fed. R. Bankr. P. 7012(b) ("in non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the *express* consent of the parties") (emphasis added).  Penson did not so expressly consent; rather, it *withheld* its consent on all claims. *See* Mot. at 14 n.4; *see also In re Bennett*, 154 B.R. at 139-40 (rejecting implied consent theory by relying on Fed. R. Bankr. P. 7012(b) and noting that "the court in *Men's Sportswear* supported its conclusion with pre-1987 amendment cases and did not make any mention of the amended Rule 7012(b)").

## II.   THE *ORION* FACTORS FAVOR WITHDRAWAL OF THE REFERENCE.

### A.   The Bankruptcy Court Does Not Have the Constitutional Authority to Enter Final Judgment on Any of the Claims in the Amended Complaint.

#### 1.   The Common Law Claims Are Matters of Private Right.

The Bankruptcy Court does not have authority to enter final judgment on the Trustee's four common law claims (Counts IV, V, VI and VII) because these are matters of private right that would not be resolved in the claims allowance process.  Mot. at 8; *see Dev. Specialists*, slip op. at 19-20 (finding that bankruptcy court did not have constitutional authority to enter final judgment on claims arising from "state partnership and contract law"); *Meyers v. Textron Fin. Corp. (In re AIH Acquisitions, LLC)*, 4:11-CV-379-A, 2011 WL 4000894, at *3 (N.D. Tex. Sept. 7, 2011) ("*Stern*, when applied to this case, leads to the conclusion that the bankruptcy court

---

that a proceeding is core, that admission is irrevocable.  *See id.* at 131.  This proposition has no application here because Penson has not made any such admission.  And, as explained in the Motion, the critical inquiry under the first *Orion* factor is not whether a claim is labeled "core" but whether the Bankruptcy Court has the constitutional authority to enter final judgment.

lacked the constitutional authority to render the judgment of dismissal [of the state law claims] with prejudice.").

The Trustee concedes this.  Opp. at 9 ("The Trustee recognizes that the fourth through seventh causes of action are common law actions.").  The parties agree that these four claims cannot be finally adjudicated by the Bankruptcy Court.

## 2.   The Fraudulent Transfer Claims Are Matters of Private Right.

*Stern* and four subsequent decisions interpreting *Stern*—including Judge McMahon of this District only days ago—demonstrate that the Trustee's two fraudulent transfer claims (Counts I and II) are matters of private right.  Mot. at 9-12; *see Dev. Specialists*, slip op. at 19 ("Only in *Stern* did the Court actually hold that a fraudulent conveyance action implicating private rights must be fully determined in an Article III forum.").[6]

The Trustee counters that the decisions Penson cited in its Motion (*Blixseth* and *Meoli*) have misinterpreted *Stern*'s "narrow holding."  Opp. at 6.  But the two cases on which the Trustee relies—*Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman)*, Adv. No. 10-3203DM et al., 2011 WL 4542512 (Bankr. N.D. Cal. Sept. 28, 2011) and *In re Safety Harbor Resort & Spa*, __ B.R. __, No. 8:10-bk-25886, 2011 WL 3849639 (Bankr. M.D. Fla. Aug. 30, 2011)—inaccurately characterize *Stern* as applying only to the claim at issue there.  This is not a fair reading of *Stern*.  *See In re Canopy Financial, Inc.*, 2011 WL 3911082, at *2 (explaining that "the language of *Stern* makes clear that the decision, while narrow, is at least broad enough to reach [a] case" involving fraudulent transfer claims under the Code).

---

[6]      In its Motion, Penson cited *Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, __ B.R. __, Adv. No. 07-80037 (JRH), 2011 WL 3610050 (Bankr. W.D. Mich. Aug. 17, 2011) and *Samson v. Blixseth (In re Blixseth)*, Adv. No. 10-00088 (RBK), 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011).  Two district courts have read *Stern* as standing for the same proposition.  *See Dev. Specialists*, slip op. at 19-20; *Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*, Adv. No. 11-A-581, 2011 WL 3911082, at *3 (N.D. Ill. Sept. 1, 2011) ("[T]he *Stern* Court made clear that the [b]ankruptcy [c]ourt lacks constitutional authority to enter final judgment on the [fraudulent transfer] claims presented here.").

In fact, the bankruptcy court in *Heller Ehrman* conceded that if *Stern*'s "reasoning had been the holding, [it] would agree that core fraudulent transfer actions might exceed [its] authority." 2011 WL 4542512, at *5. But distinguishing between *Stern*'s reasoning and its holding is a distinction without a difference. Penson recognizes that *Stern* specifically held that 28 U.S.C. § 157(b)(2)(C) unconstitutionally granted bankruptcy courts the authority to finally decide certain counterclaims. But it is the Supreme Court's reasoning in reaching this holding— specifically, that the claim was a matter of private right, it did not fall within the public rights exception, and would not be decided in the claims allowance process—that compels the result in this case: that the Trustee's fraudulent transfer claims cannot be finally adjudicated by the Bankruptcy Court. Notably, the court in *Heller Ehrman* recognized that "[t]he comments in *Stern* and *Granfinanciera* do support an argument that the statutory designation of fraudulent transfer actions as core may be unconstitutional[.]" *Id.* at *4. Penson agrees.[7]

The decision in *Safety Harbor* is inapposite. Unlike in *Blixseth* and *Meoli*, where the courts were confronted directly with the issue of whether post-*Stern* a bankruptcy court held the constitutional authority to issue final judgment on a fraudulent transfer claim, the controversy in *Safety Harbor* did not involve fraudulent transfer claims. Rather, the issue was whether the bankruptcy court had the authority to impose restrictions on the business operations of the debtor

---

[7]     The decision in *Heller Ehrman* is also suspect because it is based on a pre-*Stern* Ninth Circuit decision—*In re Mankin*, 823 F.2d 1296 (9th Cir. 1987)—that is directly undermined by the reasoning of *Stern*. In that case, the Ninth Circuit held that Congress's delegation of authority to bankruptcy courts to adjudicate to final judgment fraudulent transfer claims did not violate Article III. *In re Mankin*, 823 F.2d at 1309. The Ninth Circuit premised this conclusion on the assumption that a fraudulent transfer claim is a public right. *Id.* But, as *Stern* and *Granfinanciera* teach, this is not the case; such claims are matters of private right. *Stern*, 131 S. Ct. at 2614. Needless to say, the Ninth Circuit's decision in *In re Mankin* neither alters *Stern* nor binds this Court. Lastly, it should be noted that the conclusion reached by the court in *Heller Ehrman* was a recommendation to the district court and, thus, it does not carry the precedential value that attaches to decisions issued by district courts. *Id.* at *2 ("I make this recommendation to give the assigned district judge my best judgment about what I think *Stern* requires[.]").

and its non-debtor guarantors as part of a chapter 11 plan.  2011 WL 3849639, at *3.  Clearly, this has nothing to do with the issues in this case.

In any event, the language from *Safety Harbor* on which the Trustee relies misses the point.  There, the bankruptcy court noted that it was "not aware of a single case during the twenty years preceding *Stern* [and after *Granfinanciera*] challenging a bankruptcy court's authority to enter final judgments in fraudulent conveyance actions."  *Id.* at *11.  This is completely understandable because it is *Stern* itself that provides the basis to challenge a bankruptcy court's constitutional authority in this regard.  As explained in the Motion, the issue in *Granfinanciera* concerned jury trial rights under the Seventh Amendment.  Mot. at 9.  By contrast, it is *Stern* that calls into question whether a bankruptcy court possesses the constitutional authority to enter final judgment on claims that Congress labeled as "core" in 28 U.S.C. § 157(b)(2).  Mot. at 7.  And, it is upon this basis that Penson challenges the Bankruptcy Court's constitutional authority to adjudicate finally the Trustee's fraudulent transfer claims.  *See Dev. Specialists*, slip op. at 18-19 (noting that *Stern* reached issues left open by *Granfinanciera*).

### 3.      The Preference Claim is a Matter of Private Right.

The Trustee asserts that, because the preference claim (Count III) derives from the Code, it can be adjudicated to final judgment by the Bankruptcy Court.  Opp. at 8.  However, *Stern* and at least four cases applying its reasoning have found that fraudulent transfer claims—which also derive from the Code—are matters of private right.  *Dev. Specialists*, slip op. at 19-20; *In re Canopy*, 2011 WL 3911082, at *3; *In re Teleservices*, 2011 WL 3610050, at *14; *In re Blixseth*, 2011 WL 3274042, at *11.  Moreover, the preference claim would not be decided in Arbco's claims allowance process and, if successful, would merely augment the bankruptcy estate.  That is insufficient to transform the preference claim into a matter of public right.  *Stern*, 131 S. Ct. at 2614.

The Trustee also points to the fact that Penson has raised the safe harbor defense under Section 546(e).  But the test under *Stern* is whether a claim is a matter of private right that will not be decided in the claims allowance process and is not otherwise within the public rights exception, not whether a defense to a claim arises from the Code.  The Trustee's preference claim satisfies this test.  The Bankruptcy Court cannot enter final judgment on this claim.

### B.     Withdrawal Will Promote Judicial Efficiency.

As explained by Judge McMahon:

> Withdrawal will promote judicial efficiency.  Because the Bankruptcy Court is not able to finally determine these proceedings without the consent of the [movants]—which does not appear to be forthcoming—any recommendations it makes will need to be reviewed *de novo* in this Court.  It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated.

*Dev. Specialists*, slip op. at 25.  So too here.

The Trustee does not dispute this.  Rather, he asserts that "the Bankruptcy Court has already reviewed both motions to dismiss, as well as recent case law on the issues raised in this action, and is familiar with the underlying facts surrounding Regensberg's Ponzi scheme."  Opp. at 10.  But the Trustee exaggerates the Bankruptcy Court's involvement in this case.  Penson's first motion to dismiss was fully submitted on August 23, 2010, but the Trustee withdrew his original complaint before the Bankruptcy Court ruled on that motion.  *See* Ancone Reply Decl., Ex. B.  Then, at the August 4, 2011 status conference, the Bankruptcy Court proposed that the parties re-brief Penson's second motion to dismiss to address recent case law, including *Stern*, that is directly relevant to this action.  *See* Ancone Decl., Ex. B at 4:16-5:3.  The Bankruptcy Court did not hear argument on that motion either, and certainly has not ruled on it.

Nor would the Bankruptcy Court's familiarity with the "facts" of this case change the efficiency calculus.  After reviewing the Amended Complaint, this Court will be just as familiar

with this action as the Bankruptcy Court is because the only "facts" are the allegations in the Trustee's pleading.  *See Dev. Specialists*, slip op. at 25 ("[B]ecause only issues of law have been presented in the case so far, [the bankruptcy court's] familiarity with the underlying facts does not weigh in favor of retention of the case before him.")  The second *Orion* factor favors withdrawal of the reference.

### C.   Withdrawal Will Decrease Delay and the Parties' Costs.

The Trustee does not dispute that withdrawal of the reference to the District Court will eliminate the additional costs and delays that will ensue if Penson's motion to dismiss is adjudicated twice.  Instead, the Trustee appears to rely on the same argument asserted in support of the second *Orion* factor; namely, that the Bankruptcy Court has a degree of familiarity with the allegations in this case.  Opp. at 10.  As noted, this argument fails.  The third *Orion* factor also favors withdrawal of the reference.

### D.   Withdrawal Will Not Adversely Affect the Uniformity of the Bankruptcy Administration.

Under *Stern*, only an Article III court, like the District Court, has the constitutional authority to finally decide the Trustee's claims.  Therefore, withdrawal of the reference is necessary for the complete adjudication of the Trustee's claims and will not adversely affect the Bankruptcy Court's administration of Arbco's estate.  The Trustee completely fails to address this *Orion* factor.

### E.   Withdrawal Will Not Promote Forum Shopping.

The Trustee contends in conclusory fashion that "the filing of [Penson's withdrawal] motion after such a long time, and while [Penson's] motion to dismiss was still pending, reeks of forum shopping."  Opp. at 9-10.  The Trustee is wrong.

First of all, as noted above, Penson did not delay in filing its Motion.  Further, the reason

that Penson moved to withdraw the reference, even before its motion to dismiss was adjudicated,

is not to forum shop, but to achieve efficiency.  The Trustee fails to articulate how Penson will

supposedly benefit from having its motion to dismiss adjudicated by this Court rather than by the

Bankruptcy Court.  The law that will apply to Penson's motion to dismiss is the same in either

case.  The Bankruptcy Court has not ruled on any motions—never mind ruled against Penson.

There is simply no basis from which to infer that Penson's Motion is motivated by forum

shopping.  The fifth *Orion* factor favors withdrawal of the reference.

## III.   WITHDRAWAL OF THE ENTIRE ADVERSARY PROCEEDING IS WARRANTED BECAUSE NON-CODE CLAIMS AND ISSUES PREDOMINATE.

In its Motion, Penson argued that even assuming, *arguendo*, that the preference claim is a

matter of public right (and it is not), withdrawal of the reference still would be warranted

because non-Code claims and issues predominate this adversary proceeding.  Mot. 19-21.  Courts

have consistently held that in such circumstances withdrawal of the entire reference is warranted.

Mot. 19-20 (citing authorities).

Nowhere in his Opposition does the Trustee even attempt to rebut this argument.  The

Trustee simply contends that if the Court decides to withdraw the reference, withdrawal "should

be deferred until trial."  Opp. at 10.[8]  Judge McMahon rejected a similar contention, reasoning

that "because [the district court] would have to review [the bankruptcy court's] conclusions of

law *de novo* were the case left in the [b]ankruptcy [c]ourt . . . , there is no reason not to do now

what must be done eventually."  *Dev. Specialists*, slip op. at 26.  And, in *Mishkin v. Ageloff*, 220

---

[8]       The three cases on which the Trustee relies—*In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993);
*McCord v. Papantoniou*, 316 B.R. 113, 126 (E.D.N.Y. 2004); *In re Magnesium Corp. of Am.*, 04 Civ. 1357 (PKC),
2004 WL 1161172 (S.D.N.Y. May 24, 2004)—are distinguishable because in none of these cases was there a
dispositive motion pending when the motion to withdraw was decided.  As the court in *In re Magnesium Corp.* itself
recognized, withdrawal "is always case specific."  2004 WL 1161172, at *2.  The specifics of this case, including
the pending motion to dismiss, weigh in favor of withdrawing the reference at this stage of the proceedings.

B.R. 784 (S.D.N.Y. 1998), after concluding that withdrawal was warranted and noting that a

motion to dismiss was pending before the bankruptcy court, the district court stated as follows:

> [A]lthough it is difficult at this stage to predict the likelihood that
> these matters will proceed to trial, especially in light of the pending
> motions to dismiss, I have found that in complicated cases such as
> this, oversight of the pretrial proceedings provides me with insight
> into the precise nature of the claims and the theories upon which
> they are based.  For these same reasons, I further decline to submit
> the motion to dismiss to the bankruptcy court for proposed findings
> of fact and conclusions of law. This would only generate another
> level of briefing and expense . . . .

*Id.* at 801 n.13.  The reasoning of *Dev. Specialists* and *Mishkin* applies with equal force here.

Withdrawing the reference at this stage of the proceeding—rather than waiting until the eve of

trial—will ensure that the twin goals of increasing judicial efficiency and reducing delay and

costs are satisfied.  The entire reference should, therefore, be withdrawn.

## CONCLUSION

For the reasons in the Motion and those set forth above, Penson's motion for an order

pursuant to 28 U.S.C. § 157(d) withdrawing the reference should be GRANTED.

Dated:  November 4, 2011

MAYER BROWN LLP

By:    /s/ Mark G. Hanchet

1675 Broadway, 19th Floor
New York, New York  10019
Tel:  (212) 506-2500
Fax: (212) 262-1910
*Attorneys for Penson Financial Services,*
*Inc.*

Of counsel:  James Ancone, Esq.

-10-